*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANSLEY NICKELL,

        Claimant-Appellee,

v

DEPARTMENT OF LABOR AND ECONOMIC
OPPORTUNITY/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellant.

UNPUBLISHED
March 11, 2025
11:09 AM

No. 369779
Wayne Circuit Court
LC No. 23-006305-AE

Before: YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Claimant, Ansley Nickell, applied for Pandemic Unemployment Assistance ("PUA") benefits in May 2020 during the COVID-19 pandemic, and initially did not need to provide proof of prepandemic employment. When the law changed, requiring applicants to submit proof of prepandemic employment to demonstrate they were otherwise able to work but could not work due to COVID-related reasons, claimant failed to submit proof of prepandemic employment and was ordered to pay restitution for overpaid benefits. Claimants subsequent appeal to the Unemployment Insurance Appeals Commission ("UIAC") was successful, and it was determined she was eligible for benefits. Appellant, the Department of Labor and Economic Opportunity/Unemployment Insurance Agency ("the Agency"), appealed the administrative decision to the Wayne Circuit Court, which affirmed the UIAC's decision that claimant was eligible for PUA benefits.

The Agency now appeals by leave granted[1] the trial court's order affirming the UIAC's decision. Because claimant never qualified for benefits under federal law, we reverse the trial court's order and remand.

---

[1] *Nickell v Dep't of Labor & Economic Opportunity*, unpublished order of the Court of Appeals, entered June 6, 2024 (Docket No. 369779).

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of the Agency's finding that claimant was ineligible for PUA benefits because of her failure to provide documentation substantiating her prepandemic employment. In March 2020, the United States Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act after the COVID-19 pandemic spread to the United States. 15 USC 9001 et seq. The CARES Act provided PUA benefits to "covered individual[s]" who were not otherwise eligible for state or federal unemployment benefits. 15 USC 2102(a)(3)(A)(i); 134 Stat 281. Claimants could self-certify they were "otherwise able to work," but could not work for a number of enumerated reasons related to the pandemic. 15 USC 2102(a)(3)(A)(ii)(I). Initially, all that was required to qualify for PUA benefits was self-certification, meaning claimants did not need to submit documentation proving that any of the enumerated reasons in subsections 15 USC 2102(a)(3)(A)(ii)(I)(aa)-(kk) existed.

Relevant here, to qualify for PUA benefits, claimant needed to self-certify she:

(I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because-

\* \* \*

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID–19 public health emergency and such school or facility care is required for the individual to work;

\* \* \*

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID–19 public health emergency;

\* \* \*

(kk) . . . or

(II) is self-employed, is seeking part-time employment, does not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, and meets the requirements of subclause (I) . . . . [15 USC 2102(a)(3)(A)(ii)(I)-(II).]

Before the pandemic, claimant attended cosmetology school full time and was to apply for a cosmetology license. Claimant did not lose a job because of the pandemic—rather, she was unable to graduate from cosmetology school and obtain her license because her school, and state offices issuing such licenses, were shuttered because of the pandemic. Claimant was scheduled to

graduate from cosmetology school in March 2020, one week before the pandemic. Claimant testified:

> I didn't have job offers, but I was definitely going to different salons and spas, because I was going into beauty . . . aesthetics. . . . So I was reaching out to spas already trying to see where I could be placed, but I couldn't really do anything until I had my license. . . . I was actually talking to Dr. Michael Gray's office. They—I submitted a resume with them. I was conducting what my schedule would be like afterwards. So they knew of me. I went and talked to them. I met their managers and everything and it seemed like everything would fall into place. But I couldn't really get a job offer until I had my license.

> \* \* \*

>  . . . I didn't have like a—like a written statement that, "Yes, we're going to offer you this job." It was more or less when I went in there to interview . . . and they were—they were willing to hire me. But they're like, "[o]kay, we'll just have to wait," and . . . it's not like it was a very formal thing. They're like, "Okay, we're just gonna have to wait."

> \* \* \*

> I had interviews before the pandemic. I had things lined up, and then it all started to hit. And I also had two school-age [sic] children, and that's where I thought this is why we're getting the pandemic relief. I have my children at home who are here all day that need breakfast, lunch, dinner, snack while they're going to school. We have to have money for our home to live.

Claimant did not start working part time until 2021.

Claimant filed a claim for PUA benefits on May 17, 2020. The Agency determined, on the basis of her self-certification, that claimant was eligible for 12 weeks of PUA benefits retroactive to March 15, 2020, and another 27 weeks of PUA benefits as the pandemic went on. The Agency issued two monetary redeterminations in 2021, extending the number of weeks of claimant's benefit eligibility, first to 57 weeks, then to 86 weeks. On December 27, 2020, the Continued Assistance for Unemployed Workers Act of 2020 ("CAA") was passed, amending the PUA program in the CARES Act (DOL Letter, I-1). See 15 USC 9001-9021. To receive PUA benefits, the CAA required additional proof: claimants had to "provide[] documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment . . . ." 15 USC 9021(a)(3)(A)(iii). A claimant had to submit documentation within "21 days after the later of the date on which the individual submits an application for pandemic unemployment assistance . . . or the date on which an individual is directed by the State Agency to submit such documentation . . . ." 15 USC 9021(a)(3)(A)(iii). The 21-day deadline could be extended if a claimant showed "good cause under applicable State law for failing to submit such documentation[.]" 15 USC 9021(a)(3)(A)(iii).

On February 12, 2021, the Agency sent claimant an electronic[2] Request for Information, specifically for documents like pay stubs, earning statements, or W-2 forms, showing claimant was employed before the pandemic commenced. The Request stated claimant would no longer be eligible for PUA benefits if she did not provide proof of prepandemic employment by May 17, 2021. The Request also stated: "The [CAA] requires that individuals receiving [PUA] prove a recent attachment to the labor force." After claimant did not submit any documents by the May 17 deadline, the Agency determined claimant was not eligible for PUA benefits and sent claimant a Notice of Determination detailing which weeks claimant was subject to restitution for overpaid benefits.

Claimant protested the Agency's decision through an online notice, stating she "was never notified by mail, email, or online to submit such required documentation," and sought a hearing before an Administrative Law Judge ("ALJ"). Claimant testified she did not receive the Request for Information on February 12, 2021. Claimant provided tax statements which showed she reported income in 2018 and 2020, but not 2019. Claimant also provided a college transcript, which showed she was a full-time student in 2019. The ALJ stated the documents claimant produced did not substantiate her employment. Nevertheless, the ALJ entered an order reversing the Agency's redetermination, finding claimant was eligible for PUA benefits in May 2020 because she had interviewed for and could have received a job offer had the pandemic not prevented her from graduating and obtaining a cosmetology license. The ALJ also ruled claimant's deadline to submit proof of employment was tolled until the Agency showed proof of service of the Request for Information, and the Agency was estopped from holding claimant's failure to submit proof of employment against her.

The Agency appealed the ALJ's decision to the UIAC, requesting the UIAC "set aside the Order, remand for rehearing, [and] order Claimant to submit employment verification documents." The UIAC affirmed the ALJ's decision, ruling "the . . . findings of fact accurately reflect the evidence[,]" and the ALJ "properly applied the law to those facts." The UIAC agreed claimant's deadline to submit proof of employment was tolled until the Agency showed proof of service of the Request for Information. The Agency then appealed to the Wayne Circuit Court. The circuit court entered an order denying the Agency's appeal and affirming the UIAC's ruling. This appeal followed.

## II. PUA BENEFIT ELIGIBILITY

The Agency argues the trial court erred in ruling claimant was eligible for PUA benefits because claimant did not present documentation of prepandemic employment. We agree the trial court erred, but for different reasons.

---

[2] Claimant elected a "Go Green" paperless notification option, where she received correspondence through her online MiWAM account, not through the mail. Unemployment Insurance Agency, *Frequently Asked Questions-Account Status*, https://www.michigan.gov/leo/bureaus-agencies/uia/frequently-asked-questions/for-employees/account-status (accessed February 25, 2025).

## A. STANDARD OF REVIEW

Under the Michigan Constitution, this Court's review of an administrative action must "include, as a minimum the determination whether such final decisions, findings, rulings and orders are authorized by law; and, . . . whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. "This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles . . . ." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 431; 906 NW2d 482 (2017) (quotation marks and citation omitted). We further consider whether the lower court misapplied the Michigan Constitution's "substantial[-]evidence test" to the facts under "a clear-error standard of review." *Id*. (quotation marks and citation omitted). "Great deference is accorded to the circuit court's review of the [administrative] agency's factual findings; however, substantially less deference, if any, is accorded to the circuit court's determinations on matters of law." *Id*. at 432 (alteration in original; quotation marks and citation omitted). This Court reviews issues of statutory interpretation de novo. *Dep't of Licensing & Regulatory Affairs/Unemployment Ins Agency v Lucente*, 508 Mich 209, 230; 973 NW2d 90 (2021).

## B. ANALYSIS

The trial court did not apply the correct legal analysis when it affirmed the UIAC's ruling that claimant was eligible for PUA benefits.

The trial court erred in affirming the UIAC's decision, just as the UIAC erred in ruling "[t]he ALJ properly applied the law" to the facts in this matter. The trial court stated the standard of review "gives great deference to the agency[.]" However, as stated, "substantially less deference, if any, is accorded to the circuit court's determinations on matters of law[]" than to the circuit court's review of agency fact-finding. *Lawrence*, 320 Mich App at 432 (quotation marks and citation omitted).

Under 15 USC 2102(a)(3)(A)(ii)(I)(dd), for claimant to have qualified for PUA benefits in March 2020, she would have needed to be able and available to work, but unemployed or unable to work because "a child or other person in the household for which [she] has primary caregiving responsibility [was] unable to attend school or another facility that [was] closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work." Claimant testified in the circuit court that she had two school-aged children, "and that's where I thought this is why we're getting the pandemic relief . . . ," and may have contemplated she fell within § (dd) when self-certifying. And under § (gg), which required claimant to self-certify she was scheduled to commence employment but was unable to because of the pandemic, claimant testified she went for several interviews and *could have* obtained a job offer. She also testified she never obtained a formal job offer because she could not obtain a cosmetology license. Had claimant been offered a position as an esthetician, and the spa shuttered because of the pandemic, she would have qualified under § (gg). And had claimant started working, but had to leave her job because her children's school closed and she needed to stay home with them, claimant would have qualified under § (dd). But the evidence claimant provided is insufficient under the plain language of the statute to prove eligibility for PUA benefits.

-5-

In ruling claimant was eligible for PUA benefits, the ALJ did not rule claimant had submitted documentation to substantiate employment, as the CAA requires. Indeed, the ALJ stated the documents claimant produced—her tax returns and college transcript—did not substantiate her employment. Claimant's 2019 tax return indicated she earned no income that year. Further, the ALJ found the income claimant earned in 2020, came from employment after the pandemic began. Claimant testified she was not employed in March 2020.

The ALJ also did not rule claimant had substantiated any planned employment. In all, claimant's testimony, even if it showed she planned to begin employment, would not qualify as the documentation required by the CAA, which is "proof of recent attachment to the labor force." Despite all of this, the ALJ ruled claimant was eligible for benefits because but for the pandemic, she *could have* received a job offer. This ruling was contrary to law, and was clear error. *Lawrence*, 320 Mich App at 431.

Because we hold the ALJ erred in determining claimant was eligible for PUA benefits after claimant was given several opportunities to provide documentation to the ALJ during the appeal process, we decline to address whether claimant received proper notice of the requirement to submit documentation. And because the trial court affirmed the orders entitling claimant to PUA benefits, the trial court did not apply the correct legal principles. *Id.*

## III. CONCLUSION

We reverse the trial court's order and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Colleen A. O'Brien